UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 13-cr-442 |
| ERIC K. DILLARD, | ) | |
| | ) | Judge John W. Darrah |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On November 6, 2014, a jury found Defendant, Eric K. Dillard, guilty of one count of

possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

Following his conviction, Defendant filed a motion for a new trial pursuant to Federal Rule of

Criminal Procedure 33. The Government filed a response opposing this Motion. Defendant

alleges that his former attorney, Robert K. Crowe, provided ineffective assistance of counsel

because the attorney failed to call a particular witness for the defense. For the reasons stated

below, Defendant's Motion [174] is denied.

## BACKGROUND

On May 22, 2013, a federal grand jury returned a one count indictment, charging that

Defendant possessed with intent to distribute five kilograms or more of cocaine.

On March 17, 2014, the Government filed superseding information that alleged the same charge,

but removed the quantity allegation contained in the original indictment to charge a quantity of

mixture substances containing cocaine. (Dkt. #49.) Defendant filed two motions to suppress

certain evidence. The Government filed a response in opposition to Defendant's motions. An

evidentiary hearing was held to determine the admissibility of evidence on

September 4 and 5, 2014. Parties submitted post-hearing briefs, and after consideration of the facts presented at the hearing and the arguments and authority presented by the parties, Defendant's motions were denied. (Dkt. #117.)

The matter proceeded to trial on October 6, 2014, but the jury was unable to reach a unanimous verdict. The matter was retried on November 3, 2014, and on November 6, 2014, the jury returned a verdict of guilty.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Under Seventh Circuit law, a new trial is necessary in situations where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) (citation omitted); *see also United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (stating that the defendant is entitled to a new trial if the trial error "had a prejudicial effect upon the jury's verdict"). The exercise of power conferred by Rule 33 is reserved for only the most extreme cases. *United States v. Linwood,* 142 F. 3d 418, 422 (7th Cir. 1998) (internal citation omitted). Defendant moves for a new trial under Fed. R. Crim. P. 33, alleging that Crowe provided ineffective assistance of counsel because he failed to call a particular witness for the defense.

To establish ineffective assistance of counsel, defendant must first establish that trial counsel's performance was outside the wide range of prevailing norms. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that trial counsel rendered adequate assistance because of the difficulties of evaluating trial counsel's conduct through the

"distorting effects of hindsight." *Id*. at 689. If a defendant can establish that counsel's performance was outside the range of reasonable professional standards, he must then show prejudice from counsel's performance. *Id*. at 786. For prejudice to exist, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694.

## ANALYSIS

The Government's case against Defendant was assisted by a cooperating source named Vincent Howard. Howard testified for the Government at the second trial as follows: Howard transported and sold cocaine for Michael King, a suspected cocaine trafficker, and cooperated with the Drug Enforcement Administration ("DEA") in its investigation of King. (Sep. 4, 2014 Tr. 20-21.) Howard informed the DEA that he would be meeting King on May 26, 2008, to pick up five kilograms of cocaine at the residence of Claude McKay, at 924 East Hyde Park Boulevard in Chicago, Illinois. (Id. at 25:9-26:6.) On that date, Howard met with King, McKay, and Defendant prior to the arrival of the cocaine shipment. (Trial Tr. 121-125.) A member of the DEA task force, Officer Dwayne Johnson, was positioned in front of the residence to maintain surveillance of Howard. After a short time, Officer Johnson observed Howard exit the building with an individual later identified as Defendant. The two men separated, and the individual entered a blue Mercury Mountaineer. (Dkt. #175 Exh. A.) Members of the DEA task force observed Howard's vehicle travel with the blue Mountaineer to a parking garage. (Trial Tr. at 42-46.) After approximately five minutes, Howard's vehicle, the blue Mountaineer, and a maroon GMC exited the garage. (Id. at 47:1-5.) The task force then lost sight of the blue Mountaineer and the maroon GMC. (Id. at 47:1-5.) Later that evening, the DEA sent task force members to Defendant's place of business and recovered the Mountaineer. Defendant was inside

his business when the task force located the Mountaineer. Three kilograms of cocaine were recovered from inside the vehicle. (Id. at 71.)

On August 25, 2014, in anticipation of the suppression hearing, the Government interviewed Officer Dwayne Johnson. In a letter, dated August 28, 2014, the Government informed Crowe of the interview and provided him with a copy of the interview report. (Dkt. #175.) As stated in the report, Officer Johnson recalled establishing surveillance of Howard while alone in his vehicle on May 26, 2008. Officer Johnson reported that he saw Howard leave the residence with an individual that the Government later identified as Defendant. Officer Johnson described the individual as "a large black male who appeared to have a dark complexion." Later in the same interview, Officer Johnson was shown a photograph of Defendant and identified him as the person exiting the residence with Howard and driving away in the blue Mountaineer. (Dkt. #175 Exh. A.)

At the evidentiary hearing for Defendant's motions to suppress, Crowe called Officer Johnson as a witness. Crowe elicited testimony from Officer Johnson on his observations, including his initial description of the individual exiting the East Hyde Park residence with Howard. (Sep. 4, 2014 Tr. 120.) Officer Johnson confirmed that the description he provided of the individual leaving with Howard in his interview was that of a black male with a dark complexion. (Sep. 4, 2014 Tr. 122.) Crowe then asked whether Defendant had a dark complexion, and after Officer Johnson responded that he did not, Crowe elicited testimony from him that Michael King and Devin Neal, who leased the blue Mountaineer, did have dark complexions. (Sep. 4, 2014 Tr. 122-126.)

Defendant argues that Officer Johnson's inconsistent description of the individual leaving the East Hyde Park residence with Howard, if introduced by his testimony at trial, would have

raised "serious doubts" about the Government's assertion that Defendant was the driver of the blue Mountaineer. Defendant contends that while Defendant does not have a dark complexion, King and Neal fit Officer Johnson's initial description and that this would create doubt as to which individual was seen with Howard after the meeting. Further, that without confirmation that Defendant was the driver of the vehicle, there was no convincing evidence at trial that Defendant was involved with the cocaine distribution and knowingly possessed cocaine.

*Reasonable Professional Standards*

While Officer Johnson's initial description of the individual with Howard contradicts his later identification of the individual as Defendant, based on all the evidence presented at trial, Crowe's decision not to call Officer Johnson as a witness for the defense was within the range of reasonable professional standards. After Officer Johnson saw a picture of Defendant, he positively identified Defendant as the individual who left the East Hyde Park residence with Howard. If called as a witness for the defense, it is reasonable to conclude that Officer Johnson would have positively identified Defendant a second time in the courtroom at trial. In addition to these positive identifications, the Government's assertion that Defendant was the individual with Howard was supported by testimony presented at trial, and the inclusion of Officer Johnson's testimony would only have strengthened the Government's case.

Defendant's presence at the East Hyde Park residence meeting and his identification as the driver of the Mountaineer was supported by testimony from Claude McKay and Devin Neal. Defendant points out that Claude McKay was an admitted drug dealer testifying in return for a substantial reduction in his sentence. McKay received a sentence of 57 months on a conviction that carried a ten-year statutory minimum, and his principle source of income since 1987 was the

narcotics trade.  Defendant also notes that Devin Neal testified under a grant of immunity[1].

McKay testified that there were only four men at this meeting:  Michael King, Vincent Howard, Defendant, and himself.   (Trial Tr. 121-125.)  Defendant argues that two other men involved with the cocaine shipment fit Officer Johnson's description and could have been the driver of the blue Mountaineer; Michael King and Devin Neal.  However, McKay testified at trial that Howard left with Defendant to retrieve the shipment and that King remained behind at the apartment.  (Trial Tr. 130.)  McKay also stated that he had never met Devin Neal, that Neal was not at his apartment, and there is no evidence on the record to support Defendant's implication that Neal may have been present.  When shown a photograph of Neal while testifying, McKay did not recognize him.  (Trial Tr. 114.)  In contrast, McKay was well acquainted with Defendant and testified that he had known Defendant since the 1990s.  (Trial Tr. 115.)  McKay's testimony established that Defendant, not King, was the individual who left with Howard and that Neal was not present at the meeting at the Hyde Park residence.

Devin Neal, who Defendant also argues may have been the driver of the Mountaineer, also testified at the trial.  Defendant notes that the blue Mountaineer was leased to Neal, however, Neal testified that he loaned the car to Defendant the night before the shipment arrived because it had a hidden compartment, which was required for pickup of the cocaine.  Neal also stated that he had plans to meet with Defendant after Defendant obtained the cocaine in order to get his share of the shipment.  (Trial Tr. 202-215.)  This testimony supported the Government's

---

[1] The jury was specifically instructed regarding the testimony of witnesses given or promised a benefit from the Government in return for testimony and witnesses who have pled guilty, according to the 7th Circuit Pattern Criminal Jury Instructions – Section 3.05:  Witnesses Requiring Special Caution.  The use of informers "may raise serious questions of credibility. To the extent that they do, a defendant is entitled to . . . have the issues submitted to the jury with careful instructions."  *On Lee v. United States*, 343 U.S. 747, 757 (1952).

assertion that Defendant was in possession of the Mountaineer on the day of the shipment. Thus, McKay and Neal's testimony supported the Government's claims that: 1) Defendant was at the meeting with King, McKay, and Howard; 2) Defendant left the Hyde Park residence with Howard; 3) King remained at the residence; 4) Neal was not present at the meeting; and 5) Defendant was in possession of the Mountaineer the night before the shipment arrived.

Officer Johnson's testimony, if called to testify, would have further supported the crucial link between Defendant and the Mountaineer that the Government established through other evidence at trial. His testimony would have provided confirmation of a fact not confirmed by McKay and Neal - that Defendant was the driver of the Mountaineer. Officer Johnson observed the individual with Howard get into the blue Mountaineer and drive away. If this individual was not King, McKay or Howard, the only men present at the meeting, then the jury had enough evidence to conclude that Defendant was the person leaving with Howard, and the driver of the Mountaineer. Various task force members testified that this same Mountaineer travelled with Howard's vehicle to the parking garage to obtain the shipment of cocaine. The Government also produced evidence that this Mountaineer was later recovered outside Defendant's business with three kilograms of cocaine inside. Defendant was located inside his business when the vehicle was discovered. Officer Johnson's minor misidentification would not balance out the negative effect his further testimony would have provided. This support for the link between Defendant and the Mountaineer and the additional testimony offered by various task force members, McKay and Neal, indicate that Officer Johnson's testimony would be, at best, neutral and more likely detrimental to Defendant's case. Therefore, Crowe's decision not to call Officer Johnson as a witness was within range of reasonable professional standards.

*Prejudice*

Even if Crowe's performance was not within reasonable professional standards, there was no prejudice. It is not reasonably probable that, but for counsel's alleged unprofessional errors, the addition of Officer Johnson's testimony would have led to a different result. If Officer Johnson's mistaken description was elicited during his testimony, it is reasonable to conclude that the Government would have brought up Officer Johnson's prior positive identification on cross-examination. Officer Johnson's identification was consistent with and corroborated by the rest of the evidence presented by the Government at trial. The Government produced enough evidence at trial to allow the jury to determine that Defendant was the driver of the Mountaineer and knowingly possessed cocaine, even with the small doubt that may have resulted by Officer Johnson's misidentification. Further, as noted before, it is very likely that Officer Johnson would have positively identified Defendant in the courtroom at trial. The discrepancy in Officer Johnson's testimony regarding the nature of complexion would have made no difference in the outcome of this proceeding. Moreover, impeachment of Officer Johnson's testimony cannot be said to outweigh the other contrary evidence produced at trial. Crowe's decision not to call him as a witness for the defense did not result in prejudice to Defendant.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for a New Trial [174] is denied.

Date:   August 26, 2015

_____
JOHN W. DARRAH
United States District Court Judge